# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Abigail Rosenberg, | )<br>) |
| Plaintiff, | ) 2:14-cv-01507 JWS<br>) |
| v. | ) ORDER AND OPINION<br>) |
| Raymond E. Mabus, *et al.*, | ) [Re: Motion at Docket 60]<br>) |
| Defendants. | )<br>) |

## I. MOTION PRESENTED

At docket 60 defendants Raymond E. Mabus and the Department of the Navy (collectively, "the Navy") move for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Navy supports its motion with a separate statement of facts at docket 61. Plaintiff Abigail Rosenberg ("Rosenberg") opposes at docket 65. At docket 66 Rosenberg submits a document pursuant to Local Rule 56.1(a) captioned as: "Statements of Facts in Opposition to Defendant's [sic] Motion for Summary Judgment." The Navy replies at docket 73 and files a notice of errata at docket 74.

Oral argument was not requested and would not further assist the court.

## II. BACKGROUND

At the outset the court notes that Rosenberg's separate statement of facts at docket 66 violates Local Rule 56.1 in two respects. First, it was erroneously filed under Local Rule 56.1(a). This rule does not apply because Rosenberg is not the moving

party. As the party opposing summary judgment, Rosenberg was required to file a controverting statement of facts pursuant to Local Rule 56.1(b), setting forth:

> (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and
>
> (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party.[1]

Before Local Rule 56.1(b) was amended in 2010, it provided that if a party opposing summary judgment failed to controvert any statement of fact in this manner, that fact would automatically "be deemed admitted for purposes of the motion for summary judgment."[2] Under the current rules, the court has discretion to "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order."[3]

Second, Local Rule 56.1(b) requires the nonmoving party to support any statement of fact with "a reference to the specific admissible portion of the record." This requirement is not unique to the District of Arizona. Rule 56(c)(1)(A) provides that a party using materials to assert that "a fact cannot be or is genuinely disputed" must cite "to particular parts of materials in the record." Yet, the statement of facts that

---

[1] LRCiv 56.1(b).

[2] *See* LRCiv 56.1(b) (2009), *available at*: http://www.azd.uscourts.gov/sites/default/files/local-rules/2009%20CV%20Local%20Rules.pdf. This language was stricken from the rule in 2010 "as inconsistent with Fed. R. Civ. P. 56(e)." U.S. District Court for the District of Arizona, *Summary of 2010-2011 Local Rule Amendments*, http://www.azd.uscourts.gov/sites/default/files/local-rules/lramendmentsandsummarytable_0.pdf.

[3] Fed. R. Civ. P. 56(e).

Rosenberg filed lacks any citations to the record. The party cannot do what Rosenberg has done: "simply attach voluminous documents without specific explanation."[4]

Given Rosenberg's failure to properly address the Navy's assertions of fact, the court is largely unable to discern exactly which facts are disputed or exactly which specific materials support Rosenberg's assertions. Where the court cannot so discern, the court invokes Rule 56(e)(2) and deems those facts undisputed. The facts described in this opinion are those set out by the Navy, with factual disputes noted where the court was able to discern them.

Rosenberg is a civilian Natural Resource Specialist who works at the Range Management Department of the Marina Corps Air Station, Yuma ("MCAS Yuma"). She has sued her employer, the Navy, alleging gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), which makes it unlawful for an employer to discriminate against any individual "with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[5] Title VII also contains an anti-retaliation provision that provides that it is unlawful for an employer to discriminate against an employee "because [she] has opposed any practice made an unlawful employment practice" under Title VII.[6]

In January 2012 Rosenberg submitted to the Navy an Equal Employment Opportunity ("EEO") complaint.[7] Her complaint states as follows:

---

[4] 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2721 (4th ed. 2017). See also Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."); *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir.1988) ("The district judge is not required to comb the record to find some reason to deny a motion for summary judgment.").

[5] 42 U.S.C. § 2000e-2(a)(1).

[6] 42 U.S.C. § 2000e-3(a).

[7] Doc. 61-4 at 2.

-3-

> [Rosenberg] feels she is being treated different because she is a female. She feels as if she doesn't fit in, and she wants to be heard. On Jan 25, 2012, funding requests were due. She gave her supervisor a list of projects in Oct 2011. Nothing was submitted. This was her trigger to file EEO. She has a PhD and was hired as a GS-09. A male employee was hired at GS-11.[8]

This complaint led to a desk audit to determine whether Rosenberg should be classified at a higher pay grade. The May 16, 2012 desk audit found that Rosenberg's work was consistent with her grade.[9]

In June 2012 Rosenberg's supervisor, Ron Pearce ("Pearce"), proposed that she be suspended. One day after receiving Pearce's proposed suspension, Rosenberg submitted a second EEO complaint, this time alleging that the proposed suspension was an act of retaliation for her previous EEO complaint.[10] The proposed suspension was ostensibly based on three charges: First, Rosenberg was charged with misuse of a government vehicle. Rosenberg had checked out a government vehicle, telling the person who issued her the keys that she was going to drive to a different building at MCAS Yuma. Instead, she drove it to her home and then to a bicycle shop.[11] Second, Rosenberg was charged with falsification of her timecard because her timecard from that day did not reflect her absence of "at least 1.5 hours."[12] Third, Rosenberg was charged with insubordination because she had been told on "numerous occasions . . . not to leave the workplace outside of normal working hours to go home or conduct

---

[8]*Id.*

[9]*Id.* at 27–32.

[10]*Id.* at 42.

[11]*Id.* at 34–35.

[12]*Id.* at 35.

personal business without permission."[13] The Navy found that Rosenberg was guilty of these three charges and suspended her for 14 days.[14]

Rosenberg was again suspended in 2014, based on two charges: (1) failure to comply with leave procedures based on three unauthorized absences and (2) unprofessional conduct based on two specific incidents. On January 29, 2014, Rosenberg entered the office of MCAS Yuma's EEO Officer, Shirley Beyer, "angry, red-faced and shaking" and shouted at her for "about two minutes" about certain paperwork she had not received and delays in the EEO process.[15] The next day, Rosenberg shouted at Pearce, accusing "him of failing to do his job using the following language, 'you don't push my projects, you do not do your job and you are in violation of the law.'"[16] The Navy suspended Rosenberg for 14 days.[17]

Rosenberg's complaint in this action alleges six specific counts of gender discrimination and four counts of retaliation.[18] In her response to the Navy's summary judgment motion, however, Rosenberg abandons many of these claims.[19] What remains are her claims that (1) she was hired at a low pay grade based on her gender; (2) she was turned down for a promotion because of her gender; (3) she was twice suspended because of her gender; and (4) her suspensions were motivated by retaliation for her assertion of her Title VII rights.

---

[13]*Id.*

[14]*Id.* at 46–47.

[15]Doc. 61-5 at 4.

[16]*Id.*

[17]*Id.* at 7–8.

[18]Doc. 4 at 5–7 ¶ 18.

[19]*See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) ("Jenkins abandoned her other two claims by not raising them in opposition to the County's motion for summary judgment.").

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[21] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[22] However, summary judgment is mandated under Rule 56 "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[23]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[24] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[25] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[26] All evidence presented by the non-movant must be believed for purposes of

---

[20] Fed. R. Civ. P. 56(a).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[22] *Id.*

[23] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing former Rule 56(c), which states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

[24] *Id.* at 323.

[25] *Id.* at 323-25.

[26] *Anderson,* 477 U.S. at 248-49.

summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[27] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[28]

### IV. DISCUSSION

#### A. Disparate Treatment

Rosenberg's claims that she was hired at a low pay grade, turned down for a promotion, and twice suspended because of her gender are "disparate treatment" claims. Disparate treatment occurs "where an employer has 'treated [a] particular person less favorably than others because of' a protected trait. A disparate-treatment plaintiff must establish 'that the defendant had a discriminatory intent or motive' for taking a job-related action."[29] One relatively rare way that a Title VII plaintiff can establish such intent or motive is through direct evidence. "Direct evidence is 'evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'"[30] Rosenberg does not contend that she has direct evidence of the Navy's discriminatory intent or motive.

"Absent direct evidence of discrimination, a Title VII plaintiff may prove his case through circumstantial evidence, following the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)," ("the *McDonnell Douglas*

---

[27]*Id.* at 255.

[28]*Id.* at 248-49.

[29]*Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–86 (1988)).

[30]*Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)).

-7-

framework").[31]  Under this framework the plaintiff must first establish a prima facie case of discrimination.[32]  If she "succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct.  If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination."[33]  At summary judgment the plaintiff "need produce very little evidence" because "'the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a fact-finder, upon a full record.'"[34]  "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment . . . does not even need to rise to the level of a preponderance of the evidence."[35]

### 1. Disparate treatment based on initial pay grade

Rosenberg was hired at the pay grade "YD-0401-02" under the National Security Personnel System ("NSPS") pay schedule.[36]  This means that her "pay plan" was "YD," her occupation code was 0401, her "grade/level" was 02, and her step was 00.[37]  Her initial annual salary was $46,625,[38] which was equivalent to a grade of GS-9 under the General Schedule ("GS") system.[39]  Rosenberg contends that Pearce hired her at the

---

[31]*Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002).

[32]*Vasquez*, 349 F.3d at 640.

[33]*Id.*

[34]*Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123–24 (9th Cir. 2000) (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996)).

[35]*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994) (citation omitted).

[36]Doc. 67-2 at 1; doc. 67-3 at 14.

[37]Doc. 67-3 at 16.

[38]*Id.* at 14, 16.

[39]Doc. 61-2 at 24.

GS-9 grade instead of the GS-11 grade on account of her gender. As evidence of this, Rosenberg points to the "NSPS Pay Band/GS Grade Equivalency Chart" submitted by Rosenberg, which states that the YD-2 pay band encompasses GS grades 9 through 13. Further, the comments section of the Navy's "Recruit/Fill Request Form" lists the position's salary range as $45,650 to $67,744.[40] With regard to her male counterparts, Rosenberg observes that the Navy hired Robert Law ("Law") in July 2010 to the same position to which she was hired but Law was hired at the GS-11 level.[41] She also notes that the Navy hired Jonathan Gholson ("Gholson") to a Natural Resource Specialist position in 2013 at the GS-12 level.[42]

The Navy argues that Rosenberg's evidence fails to establish a prima facie case of wage discrimination. It contends that Rosenberg's claim must meet the standards of the Equal Pay Act, which apply where "a Title VII claimant contends that she has been denied equal pay for substantially equal work."[43] Rosenberg implicitly concedes that this accurately describes her claim by not responding to this argument. Under the Equal Pay Act's standards, the plaintiff must show (1) that the jobs being compared require "the exercise of substantially equal skill, effort, and responsibility" and are performed under similar working conditions; and (2) that the plaintiff received less pay than a male counterpart for equal work.[44]

The court need not decide whether Rosenberg has met her burden of establishing a prima facie case of wage discrimination. Even assuming that she has,

---

[40]Doc. 67-2 at 1.

[41]Doc. 61 at 4 ¶ 12; doc. 67-5 at 9.

[42]Doc. 69-3 at 1, 13. Rosenberg also points to Wylie Homesley, doc. 65 at 11–12, but his hiring does not support her claim because Homesley was hired at the GS-7 level. Doc. 69-2 at 2.

[43]*Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1465 (9th Cir. 1985), overruled on other grounds by *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262 (9th Cir. 1991).

[44]*Id.*

the Navy is entitled to summary judgment on this claim because it has convincingly rebutted Rosenberg's prima facie case with evidence showing that the pay disparities she identified are based on a different factor than sex.[45]  Pearce testified at his deposition that he denied Rosenberg's request for a GS-11 position because "[t]hat was not the position that was offered."[46]  The Navy has "a table of organization that says what the grade[] of each position" is, Pearce stated, and when a position becomes vacant that table dictates the position's grade.[47]  "[I]t's the position description that dictates the grade and not the qualifications of the person."[48]  Accordingly, the Navy explains, Rosenberg started at the GS-9 level because that was the advertised grade of the position; Law started at GS-11 because that was the advertised grade of his position;[49] and Gholson started at GS-12 because that was the advertised grade of his position.[50]  Rosenberg makes no attempt to show that this explanation is actually a pretext for discrimination.[51]  She has thus failed to raise a triable issue with respect to wage discrimination.

---

[45] *Stanley v. Univ. of S. California*, 178 F.3d 1069, 1075 (9th Cir. 1999) (citing 29 U.S.C. § 206(d)(1)).

[46] Doc. 61-2 at 106.

[47] *Id.* at 108.  *See also id.* at 121 ("[T]he table of organization was fixed by headquarters, Marine Corps, and to change it, it was a long process.").

[48] *Id.* at 108.  *See also id.* at 121 (Q: "When [Rosenberg] was hired as a 9, when you advertised that position as a 9 and resulting in her being hired, you were stuck, at that time, calling it a 9."  A: "I had zero discretion to change it.").

[49] *Id.* at 110.

[50] Doc. 69-3 at 1.

[51] *See Godwin*, 150 F.3d at 1222 ("In those cases where direct evidence is unavailable . . . the plaintiff may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable.  Such evidence of 'pretense' must be 'specific' and 'substantial' in order to create a triable issue with respect to whether the employer intended to discriminate on the basis of sex.").

### 2. Failure to promote

In 2013 Rosenberg applied for a promotion to the GS-12 position that was eventually awarded to Gholson. The posting for the position states that the applicant must demonstrate, among other things, specialized experience in "natural resources planning for military land uses using GIS (Geographical Information Systems) software."[52] Rosenberg admits that she lacked this requisite experience with GIS software.[53] Nevertheless, she alleges that she was turned down for the promotion because of her gender.

To establish a prima facie case of failure-to-promote discrimination under a modified *McDonnell Douglas* test, a plaintiff must show that: (1) "she belongs to a protected minority;" (2) "she applied for and was qualified for the position that she was denied;" (3) "she was rejected despite her qualifications;" and (4) "the employer filled the position with an employee not of plaintiff's class, or continued to consider other applicants whose qualifications were comparable to plaintiff's after rejecting plaintiff."[54] Providing this "bare minimum of evidence" is but one way to establish a prima facie case.[55] The proof required may vary from case-to-case and a plaintiff "may rely also on other circumstantial evidence that tends to raise an inference of discrimination."[56]

Here, Rosenberg relies on the *McDonnell Douglas* test. She cannot establish a prima facie case, however, because she was not qualified for the promotion for which she applied. As for this second *McDonnell Douglas* test factor, Rosenberg states that

---

[52] Doc. 69-3 at 3. *See also* Rosenberg's deposition transcript, doc. 61-2 at 55 (Q: "[W]hat they were looking for in the position as it was advertised was somebody who was already an expert in GIS; right?" A: "Yes.").

[53] Doc. 61-2 at 55 ("I might not be an expert in GIS, but if I was provided the opportunity, I would become an expert on it.").

[54] *Tarin v. Cty. of L.A.*, 123 F.3d 1259, 1264 n.3 (9th Cir. 1997).

[55] *Lyons*, 307 F.3d at 1114.

[56] *Id.*

-11-

she was "beyond qualified for the GIS specialist, GS-12 position."[57] This is belied by her own admissions that GIS specialization was a prerequisite for the job and she was not a GIS specialist. Rosenberg has failed to raise a triable issue regarding her failure-to-promote claim.

### 3. Discriminatory discipline

Rosenberg alleges that her two suspensions were retaliatory and discriminatory. Her retaliation claim is discussed below. The court first turns to her claim that the suspensions amount to disparate treatment.

The Navy asserts that in order for Rosenberg to establish a prima facie case of discriminatory discipline with circumstantial evidence, she must meet the four-part version of the *McDonnell Douglas* test set out in *Godwin*.[58] This is unpersuasive for several reasons. First, *Godwin* is not on point because it was a failure-to-promote case, not a discipline case. Second, as noted above, the Ninth Circuit had held that providing evidence that meets the *McDonnell Douglas* test is merely "[o]ne way" to establish an inference of unlawful discrimination with circumstantial evidence.[59] Another way, and the method chosen by Rosenberg, is by producing evidence showing "that the employer treated similarly situated employees differently."[60]

---

[57]Doc. 65 at 14.

[58]Doc. 73 at 8–9 (citing *Godwin*, 150 F.3d at 1220).

[59]*Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997). *See also Lyons*, 307 F.3d at 1114.

[60]*Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000). The Fifth Circuit has set out the following four-part test for demonstrating a prima facie case of "discriminatory discharge due to unequal imposition of discipline: (1) That plaintiff was a member of a protected group; (2) That there was a company policy or practice concerning the activity for which he or she was discharged; (3) That non-minority employees either were given the benefit of a lenient company practice or were not held to compliance with a strict company policy; and (4) That the minority employee was disciplined either without the application of a lenient policy, or in conformity with the strict one." *EEOC v. Brown & Root*, 688 F.2d 338, 340–41 (5th Cir. 1982). If the word "discharged" in factor two is replaced by "disciplined," this test is potentially applicable to a discriminatory discipline claim such as Rosenberg's.

-12-

Rosenberg generally alleges that the Navy held her to a stricter standard for complying with workplace policies than her male counterparts. With regard to her suspension for misuse of a government vehicle, Rosenberg asserts that "it was common practice for her co-employees to take vehicles home and they were never suspended."[61] According to Rosenberg, a male Navy employee, Bill Sellars ("Sellars"), admitted to her that he takes a government vehicle "home occasionally when he has to go on travel to save him the inconvenience of having to come and drive onto base."[62] According to Rosenberg, Sellars also admitted to taking a government vehicle home to pick up folding chairs and an ice chest of bottled water to "assist a family that had come out to MCAS Yuma to visit the crash site of their loved one."[63] Rosenberg also testified that male Navy employee Lydin Grizzle ("Grizzle") used a government vehicle to pick her up at the garage while her car was being serviced.[64]

With regard to her suspension for unprofessional conduct, Rosenberg testified that the men she works with "swear a lot," "have loud voices," and "insult each other a lot,"[65] yet they are not cited for unprofessional conduct. Finally, Rosenberg contends that on March 8, 2013, male Navy employee Sean Butler ("Butler") was intoxicated during work hours but he was simply sent home, not suspended.[66]

---

[61] Doc. 65 at 17.

[62] Doc. 61-2 at 49. *See also* doc. 69-4 at 3.

[63] Doc. 61-2 at 49–50.

[64] *Id.* at 50.

[65] *Id.* at 9. *See also* doc. 61-5 at 24 ("[I]t is common for Mr. Pearce and my fellow male co-workers to have discussions where they yell at each other and swear so loudly they can be heard from other offices. . . . It took me over a year to adjust to the loud and profanity-laden manner in which the people in the Department communicate and interact with each other.").

[66] Transcript of Rosenberg's Psychological Evaluation, doc 61-3 at 145 ("[T]here was a guy that came into the office and he was intoxicated. He was drunk and one of the women in the office went and reported him to Bill Sellers [sic] and he was sent home. He wasn't—he wasn't disciplined. . . . [H]uman resources . . . said that it wasn't intoxication, that he dealt with

Rosenberg's evidence is insufficient. Rosenberg's examples of male employees using government vehicles for personal purposes fall short because they do not reflect any disciplinary decisions taken by the Navy. Because Rosenberg's evidence does not show that Sellers or Grizzle's supervisors knew about their activity and imposed lenient discipline, it does not raise an inference of disparate treatment.

Rosenberg's testimony that various male coworkers act unprofessionally at the office is far too vague and conclusory to support a claim of disparate treatment.[67] The same is true regarding Rosenberg's evidence of the alleged fact that the Navy took lenient disciplinary actions against Butler for showing up to work intoxicated. The Navy argues that Rosenberg's evidence is too speculative to establish that the Butler incident "actually happened" or that Butler was not disciplined.[68] The court agrees. Rosenberg's only evidence of the alleged Butler incident comes from her own self-serving, conclusory statements. Conclusory, self-serving statements, without more, are insufficient to create a genuine issue of material fact.[69]

---

the problem correctly."); Email from Rosenberg to the Navy, doc. 69-4 at 3 ("On March 8, 2013 [Sellars] was notified that Mr. Sean Butler, ROCC Manager, was intoxicated during work hours. Instead of following standard reporting procedures, Mr. Sellars sent Mr. Butler home. I have notified Ms. Fitch and this is under investigation.").

[67]*See Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 779 (9th Cir. 2010) (at summary judgment "the court will not presume that general allegations embrace more specific facts to support the claim."); *Rogers v. Potter*, No. C 08-2897 SBA, 2010 WL 1608867, at *4 (N.D. Cal. 2010) ("Plaintiff's reference to other female MOS clerks is too vague and non-specific to create a genuine issue of material fact."); *Stender v. Lucky Stores, Inc.*, No. C 88-1467 MHP, 1991 WL 127073, at *7 (N.D. Cal. 1991) ("Plaintiffs' mere assertion that they 'can identify a substantial pool of probable anecdotal witnesses to support a pattern and practice claim for these positions' . . . is both too vague and too speculative to raise an issue of material fact as to class-wide disparate treatment.").

[68]Doc. 73 at 9 (citing *Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) (holding that "conclusory and speculative affidavits" were insufficient to ward off summary judgment because they failed "to set forth specific facts in support of" the party's claim)).

[69]*See F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

**B.      Retaliation**

To establish a prima facie case of retaliation Rosenberg must establish (1) "that she acted to protect her Title VII rights," (2) "that an adverse employment action was thereafter taken against her," and (3) "that a causal link exists between those two events."[70] It is undisputed that Rosenberg acted to protect her Title VII rights and that the Navy thereafter took adverse employment actions against her. The parties' dispute centers on whether there is a causal link between these two events.

Rosenberg's opposition concludes that the record contains "ample evidence" showing that "the adverse employment actions taken against [Rosenberg] were in retaliation for her complaining about Mr. Pearce, Mr. Sellars and Ms. Beyer."[71] Rosenberg does not specify what this evidence is, explain why she thinks the evidence establishes the requisite causal link, or cite any cases in support of her argument. It is unclear, for example, whether Rosenberg contends that the causal link is established by the temporal proximity between her EEO complaints and her suspensions or by some other evidence.[72] Rosenberg's failure to adequately brief the issue of causation is fatal to her claim. Further, even if Rosenberg had adequately argued that the Navy's retaliatory intent can be inferred by the timing of her suspensions, her argument would lack merit.[73]

---

[70]*Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994).

[71]Doc. 65 at 20.

[72]*See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) ("Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision.").

[73]*See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (citing with approval *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 398–99 (7th Cir.1999) (holding that four-month delay was too long)).

## V. CONCLUSION

Based on the preceding discussion, the motion at docket 60 is granted. The clerk is directed to enter judgment in defendants' favor.

DATED this 28th day of June 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT